UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAL-AGREX, Inc., a California          )   No. C-07-0964 SC
Corporation,                           )
                                       )
                    Plaintiff,         )   ORDER RE POST-TRIAL
                                       )   <u>MOTIONS</u>
                                       )
        v.                             )
                                       )
                                       )
DEE VAN TASSELL, JERRY GOODWIN, and)
DOES 1 through 20, inclusive,          )
                                       )
                    Defendants.        )
——————————————————————————————————     )
                                       )
AND RELATED COUNTERCLAIMS              )
——————————————————————————————————     )

**I.    <u>INTRODUCTION</u>**

        The parties tried this matter before a jury, beginning on
January 13, 2009, and concluding on January 22, 2009.  At the
conclusion of the trial, the jury returned a verdict in favor of
Plaintiff, Cal-Agrex, Inc. ("Cal-Agrex" or "Plaintiff"), and
awarded damages in the amount of $2,501,595.  <u>See</u> Docket No. 207
("Verdict").  The Court subsequently entered Judgment in
accordance with the jury's decision.  Docket No. 209.  Now before
the Court are three motions, each timely filed and fully briefed.
In the first motion, Defendants Jerry Goodwin ("Goodwin") and Dee
Van Tassell ("Van Tassell," together with Goodwin referred to as
"Defendants") move the Court for judgment as a matter of law and
for a new trial, pursuant to Federal Rule of Civil Procedure

50(b).  See Docket Nos. 210 ("50(b) Mot."), 218 ("50(b) Opp'n"),
223 ("50(b) Reply").  In the second motion, Defendants move for
relief from judgment under Federal Rule of Civil Procedure 60(b).
See Docket Nos. 211 ("60(b) Mot."), 219 ("60(b) Opp'n"), 225
("60(b) Reply").  Finally, Plaintiff moves the Court to amend or
alter the judgment under Federal Rule of Civil Procedure 59(e) to
award pre- and post-judgment interest on the damages award.  See
Docket Nos. 214 ("59(e) Mot."), 217 ("59(e) Opp'n"), 221 ("59(e)
Reply").

Having reviewed the parties' submissions and the record from
the trial, the Court DENIES Defendants' Renewed Motion for
Judgment as a Matter of Law and Motion for a New Trial, DENIES
Defendants' Motion for Relief from the Judgment, and GRANTS IN
PART AND DENIES IN PART Plaintiff's Motion to Amend or Alter
Judgment to Add Prejudgment and Postjudgment Interest.

## II.  **RULE 50(b) MOTION**

In their Rule 50(b) Motion, Defendants assert that because
Cal-Agrex never made the contractually-required $2,000,000
deposit, it was not entitled to recover damages for breach of
contract.[1]  Therefore, Defendants ask the Court to enter judgment
as a matter of law on Cal-Agrex's contract claim, and to reduce
the jury's damage award from $2,501,595.00 to $507,224, the
balance remaining on Cal-Agrex's deposit.  Defendants further

---

[1] The Court assumes the parties' familiarity with the
underlying facts and therefore proceeds without a factual summary.
Where necessary, citations to the trial transcript and exhibits
will be provided.

2

**United States District Court**
For the Northern District of California

contend that they are entitled to a new trial because the jury's verdict and award of damages are contrary to the weight of the evidence, and because the Court did not instruct the jury on the issue of unclean hands.  The Court addresses each of these issues in turn.

### A.    Legal Standards

#### 1.    Judgment as a Matter of Law

"Federal Rule of Civil Procedure 50(a) permits a party to move for judgment as a matter of law after the opposing party has been fully heard and prior to the submission of the case to the jury."  Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003).  Thus, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party . . . ."  Fed. R. Civ. P. 50(a).  "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion."  Fed. R. Civ. P. 50(b).  Under Rule 50(b), the party may renew the motion no later than 10 days after the entry of judgment.  Id.  The renewed motion "may include an alternative or joint request for a new trial under Rule 59."  Id. "A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion."  Id.

"Judgment as a matter of law is appropriate when the evidence

3

**United States District Court**
For the Northern District of California

presented at trial permits only one reasonable conclusion." <u>Santos v. Gates</u>, 287 F.3d 846 , 851 (9th Cir. 2002). "A jury's verdict must be upheld if it is supported by substantial evidence . . . . Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." <u>Johnson v. Paradise Valley Unified Sch. Dist.</u>, 251 F.3d 1222, 1227 (9th Cir. 2001) (internal citation omitted).

    2.  <u>New Trial</u>

Federal Rule of Civil Procedure 59(a)(1)(A) provides that, following a jury trial, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." <u>Zheng v. Am. Gem Seafoods, Inc.</u>, 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, the Court is "bound by those grounds that have been historically recognized." <u>Id.</u> "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" <u>Molksi v. M.J. Cable, Inc.</u>, 481 F.3d 724, 729 (9th Cir. 2007) (quoting <u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. 243, 251 (1940)). The failure of the Court to correctly instruct the jury on a dispositive issue has also been recognized as grounds for granting a new trial. <u>See</u> <u>Murphy v. City of Long Beach</u>, 914 F.2d 183, 186-87 (9th Cir. 1990) (affirming grant of new trial where

4

1  district court omitted instruction on one issue and gave improper

2  instruction on another).

3      **B.   Cal-Agrex's Claim for Breach of Contract**

4      Defendants' first challenge addresses the jury's conclusion

5  that Defendants breached a contract with Cal-Agrex.  See 50(b)

6  Mot. at 10-15.  Specifically, Defendants assert that Cal-Agrex

7  failed to satisfy a condition precedent, thereby releasing

8  Defendants from any obligation to perform their contractual

9  obligations.  The Purchase Agreement at issue contains the

10  following provisions relevant to this argument:

11          COMMODITY:        DENATURED (WITH OR WITHOUT
                              ANISE OIL INJECTED) NON-FAT DRY
12                            MILK POWDER NOT FOR HUMAN
                              CONSUMPTION.  FOR ANIMAL FEED
13                            ONLY

14          QUANTITY:         10,000 METRIC TONS

15                            [...]

16          PRICE:            $0.45CENTS/LB FOB WAREHOUSE IN
                              UTAH OR IDAHO AT SELLER'S
17                            OPTION (EQUIVALENT TO
                              $992.07/METRIC TON)
18
                              [...]
19
            SHIPMENT:         3,000 MT EACH MONTH
20                            JANUARY/FEBRUARY/MARCH 2005,
                              1,000 MT APRIL 2005
21
                              [...]
22
            CONDITIONS:
23              1)    $2,000,000 (TWO MILLION DOLLARS)
                      DEPOSIT TO BE WIRED TO THE ACCOUNT
24                    OF DEE VAN TASSELL BETWEEN DECEMBER
                      22-24, 2004.
25

26  Ex. P-107.  The parties do not dispute that Cal-Agrex did not make

27  a full deposit of $2,000,000 on or before December 24, 2004.

28
                                  5

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Through a series of wire transfers, beginning on December 24, 2004, and continuing through January 13, 2005, Cal-Agrex deposited a total of $1,500,000 with Van Tassell.  Trial Tr. ("T.T.") vol. 1, Jan. 13, 2009, 148:12-149:12; Ex. P-3.  "A bedrock principle of California contract law is that 'he who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'"  Brown v. Dillard's, Inc., 430 F.3d 1004, 1010 (9th Cir. 2005) (quoting Pry Corp. of Am. v. Leach, 177 Cal. App. 2d 632, 639 (Ct. App. 1960).  Because Cal-Agrex did not comply with the conditions of the Purchase Agreement, Defendants maintain it may not enforce the Purchase Agreement against them.

Cal-Agrex asserts, and the jury agreed, that Defendants released Cal-Agrex from the deposit obligation.  Specifically, Cal-Agrex asserts that Defendants waived the deposit deadline and orally modified the terms of the Purchase Agreement, such that Cal-Agrex was not required to deposit the remaining $500,000 until Defendants began shipping the nonfat dry milk ("NDM").  Defendants challenge both of these theories.  As either waiver or oral modification could have released Cal-Agrex from its December 24 deposit requirement under the contract, and the jury's Verdict does not specify one or the other, the Court reviews the record for evidence of either.

As a threshold matter, the parties dispute whether Defendants properly moved for judgment as a matter of law on the issue of waiver before the matter was submitted to the jury, as required by Rule 50(a).  Where a party fails to move for judgment as a matter

of law at the close of evidence, the party's subsequent motion to set aside the jury verdict under Rule 50(b) has no legal effect. See Collins v. City of San Diego, 841 F.2d 337, 342 (9th Cir. 1988); see also Fed. R. Civ. P. 50(b) Advisory Committee Notes to 2006 Amendment ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion.").  At the conclusion of trial, the parties and the Court engaged in extensive discussion of Defendants' motion for judgment on the issue of modification.  See T.T. vol. 5, Jan. 20, 2009, 1152:5-1162:24.  During that discussion, the Court explicitly asked Defendants' counsel whether his arguments applied to waiver and counsel said it did not:

> THE COURT:  HOW DOES THAT COME INTO THE WAIVER?
>
> MR. BRENNAN:  THAT, THE RULE I'VE JUST IDENTIFIED, WOULD ONLY APPLY TO MODIFICATION, YOUR HONOR.  SO OUR RULE 50 MOTION WOULD BE TO RULE THAT AS A MATTER OF LAW THERE CAN BE NO EVIDENCE OR CLAIM SUPPORTING MODIFICATION.  WE DO NOT MAKE THE SAME ARGUMENT REGARDING WAIVER.

Id. at 1154:16-21.  Following the close of proceedings that day, Defendants filed their written Motion for Judgment as a Matter of Law on Contract Issues.  Docket No. 198.  In that motion, Defendants argued that they were entitled to judgment on the breach of contract claim because Cal-Agrex had failed to carry its evidentiary issue on the issue of waiver.  Id. at 6-7.  The following morning, Defendants' counsel raised the issue of modification again, arguing that there was no evidence to support modification and that the Court should not instruct the jury on

7

that issue.  T.T. vol. 6, Jan. 21, 2009, at 1169:2-1171:17.
Defendants did not at that time raise any similar concerns about
whether or not to instruct the jury on the issue of waiver.  <u>See</u>
<u>id.</u>  The Court finds that Defendants raised the issue of waiver in
their written motion for judgment as a matter of law prior to the
case being submitted to the jury.  That is sufficient to satisfy
Rule 50(b), so the Court turns to the merits of the motion.

There is no dispute that Defendants waived the requirement
that the full deposit be made by December 24, 2004.  <u>See</u> 50(b)
Reply at 3.  The dispute is whether Defendants waived the
requirement that Cal-Agrex deposit the full $2,000,000 before
Defendants began shipping NDM under the contract.  Waiver is the
intentional relinquishment of a right.  <u>See</u> <u>Intel Corp. v.</u>
<u>Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1559 (9th Cir.
1991) (court will "find waiver when a party intentionally
relinquishes a right, or when that party's acts are so
inconsistent with an intent to enforce the right as to induce a
reasonable belief that such right has been relinquished").  "Proof
of express language is not necessary to show a waiver, but it may
be shown by circumstances or a course of declarations, acts, or
conduct."  <u>Alpern v. Mayfair Mkts.</u>, 118 Cal. App. 2d 541, 547 (Ct.
App. 1953).

Defendants suggest that the only evidence Cal-Agrex offered
on the issue of waiver was two letters from Rod Gallegos of Cal-
Agrex to Goodwin and Gallegos's testimony regarding the same.  <u>See</u>
50(b) Mot. at 13; Exs. P-6, P-22.  In each letter, Gallegos
promised that Cal-Agrex would pay the remainder of the deposit

8

United States District Court
For the Northern District of California

upon shipment from Defendants.  See Ex. P-6 ("As you know, we have already paid to Dee $1,500,000., the balance of $500,000. we promised to pay as soon as we commence shipping."); Ex. P-22 ("We promised to give this balance of $500,000. to Dee within two weeks when we start shipping.").  However, in the second of these letters, dated December 17, 2005, Gallegos stated, "As it is, Dee was insisting that we give him the balance of $500,000. down payment from Jan all the way until June when I stop communicating with him." Ex. P-22.  When Defendants' counsel asked Gallegos about these letters at trial, however, Gallegos testified that it was "ridiculous" for Van Tassell to request the remaining $500,000 because the parties had already agreed that Cal-Agrex would not send the balance until Defendants began shipping.  See T.T. vol. 2, Jan. 14, 2009, at 253:20-256:20.

Defendants assert that even if Goodwin waived the deposit requirement, Van Tassell did not.  Because Van Tassell and Goodwin were both parties to the Purchase Agreement, Defendants argue, neither could waive the other's rights, so Goodwin's purported waiver was ineffective.  50(b) Mot. at 13-14.  Van Tassell's testimony does not go as far as Defendants claim.  For example, Defendants say Van Tassell testified that he never waived the requirement of a full deposit.  50(b) Reply at 3.  The testimony Defendants cite, however, refers to other transactions between Van Tassell and Cal-Agrex, not to the Purchase Agreement at issue here:

> Q.  IN CONNECTION WITH ANY OTHER AGREEMENTS OR ARRANGEMENTS WITH CAL-AGREX, DID YOU EVER WAIVE THE FULL DEPOSIT REQUIREMENT?

9

United States District Court
For the Northern District of California

A.   NEVER.

Q.   WERE YOU EVER ASKED TO WAIVE THE FULL DEPOSIT REQUIREMENT?

A.   MANY, MANY TIMES.

Q.   DID YOU AGREE TO THAT?

A.   I DID NOT.

T.T. vol. 3, Jan. 15, 2009, at 611:20-6:12-3 (emphasis added). Moreover, Van Tassell had previously testified that in January 2005, when he had received only $1,500,000 of the deposit from Cal-Agrex, he attempted to purchase NDM to ship under the Purchase Agreement, but was unable to acquire the product, and he then informed Cal-Agrex that shipment would be delayed. Id. at 560:12-564:15. From this conduct, a reasonable jury could conclude that, despite the outstanding balance on the deposit, Van Tassell intended to begin shipping NDM to Cal-Agrex. Moreover, both Goodwin and Van Tassell testified that even though Cal-Agrex had not paid the final $500,000 of the deposit, they treated the contract as still continuing. T.T. vol. 3 at 453:13-454:6, 590:4-591:9. Despite the fact that both Goodwin and Van Tassell personally guaranteed the return of the deposit in the event of nondelivery of NDM, they did not return the first $1,500,000 based on Cal-Agrex's failure to pay the remainder. See Ex. P-107.

The evidence is conflicting and could support either position, depending on how one views the credibility of the witnesses. A reasonable jury, if it found Gallegos particularly credible, or found Van Tassell and Goodwin less than credible, or both, could find that Defendants had waived the balance of the

10

deposit.   In such a situation, the Court cannot substitute its own

opinion for that of the jury.   See Johnson, 251 F.3d at 1227.

Defendants are therefore not entitled to judgment as a matter of

law on the issue of waiver.

Although not raised by Defendants in their motion, the Court

notes another basis on which the jury might reasonably have found

that Defendants breached, even in the absence of waiver or

modification.   The jury received the following instruction on

anticipatory breach:

> A party can breach, or break, a contract
> before performance is required by clearly and
> positively indicating, by words or conduct,
> that he or she will not or can not meet the
> requirements of the contract.
>
> If Cal-Agrex proves that it would have been
> able to fulfill the terms of the contract and
> that Jerry Goodwin and/or Dee Van Tassell
> clearly and positively indicated, by words or
> conduct, that he would not or could not meet
> the contract requirements, then Mr. Goodwin
> and/or Mr. Van Tassell breached the contract.

Docket No. 206 ("Jury Instructions") No. 11.   Defendants did not

object to this instruction, or mention it at all, when discussing

instructions with the Court.   See T.T. vol. 6 at 1169:2-1171:17.

As the parties continued to conduct business and initiate new

contracts, some at higher prices than the Purchase Agreement at

issue here, there is ample evidence that Cal-Agrex "would have

been able to fulfill the terms of the contract" by paying an

additional $500,000.   See, e.g., Ex. P-97; T.T. vol. 1 at 157:12-

159:15, 161:5-10; T.T. vol. 3 at 568:15-570:9.   Although there may

have been justifications for entering separate contracts, or the

goods Cal-Agrex acquired may have been slightly different, there

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

is no dispute that during the period in which the Purchase Agreement was in effect, Cal-Agrex paid Defendants in excess of $1,000,000.  As such, a reasonable jury could find that Cal-Agrex could have fulfilled the deposit requirement, and Goodwin and Van Tassell therefore breached the Purchase Agreement when they finally refused to send NDM in spring 2006.

As the Court finds ample support in the record for a jury verdict that Goodwin and Van Tassell breached the contract, either based on waiver or anticipatory breach, the Court need not reach the question of modification.  Nor does the Court reach the question of remittur of damages, as Defendants' arguments on that issue are entirely based on the premise that the jury's breach of contract verdict was unfounded.  See 50(b) Mot. at 15-16. Defendants' Motion for Judgment as a Matter of Law is therefore DENIED.

**C.   New Trial**

Defendants also ask the Court for a new trial, based on four issues.  First, Defendants argue that the jury's breach of contract verdict was against the clear weight of the evidence. Second, Defendants assert that the Court erred by not instructing the jury on the issue of unclean hands.  Third, Goodwin demands a new trial on his conversion and unjust enrichment counterclaims because the jury did not reach unjust enrichment.  Finally, Defendants argue that the jury's award of damages is not supported by the evidence.  The Court addresses each in turn.

1.   Breach of Contract

Defendants contend that, even if the record was sufficient to

12

**United States District Court**
For the Northern District of California

support the jury's verdict, the overwhelming weight of the
evidence goes against that verdict, and the Court should therefore
grant a new trial. See 50(b) Mot. at 16-17 (citing Murphy, 914
F.2d at 187). Having reviewed the record, the Court disagrees.
While there are no doubt certain facts that would favor a defense
verdict here, the evidence described above in the context of
judgment as a matter of law is sufficient to convince the Court
that a new trial is not warranted. See supra Section II.B.
Defendants accepted multiple deposit payments from Cal-Agrex after
the initial deposit deadline passed, attempted to secure NDM to
fulfill the contract before the deposit was complete, never
returned the deposit, and never cancelled the contract. Moreover,
the evidence overwhelmingly demonstrates that Cal-Agrex was able
to pay the additional $500,000 at all relevant times, and in fact
paid Defendants far in excess of that for more expensive NDM. In
the Court's view, this evidence suggests that Defendants refused
to honor the terms of the disputed Purchase Agreement because they
hoped to sell NDM to Cal-Agrex at a higher price on other
contracts. Thus the Court concludes that both the evidence and
the interests of justice support the jury's verdict, and there is
no basis for conducting a new trial on the breach of contract.

### 2. Unclean Hands

Defendants assert that the Court's failure to instruct the
jury on the issue of unclean hands warrants a new trial. 50(b)
Mot. at 17-20. Cal-Agrex contends that this argument is
procedurally improper, as Defendants did not preserve the
objection during trial, and that such an instruction was

13

unnecessary on the merits.  The Court agrees with Cal-Agrex in both regards.

The Court considers the procedural question first.  Federal Rule of Civil Procedure 51 governs jury instructions.  The court "must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered."  Fed. R. Civ. P. 51(b)(2).  "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  Id. 51(c)(1).  Finally, a party may assign error to "a failure to give an instruction, if that party properly requested it and -- unless the court rejected the request in a definite ruling on the record -- also properly objected." Id. 51(d)(1)(B).

Defendants claim they preserved their objection.  It is clear that Defendants satisfied the first portion of Rule 51(d)(1)(B) by requesting the instruction.  See Defs.' Am. Separate Proposed Jury Instructions (With Authorities), Docket No. 196, at 14.  They did not, however, state their objections on the record.  At the conclusion of the evidence, Plaintiff brought a Rule 50 motion regarding Defendants' unclean hands affirmative defense, and the Court heard arguments from both sides on the issue.  See T.T. vol. 5 at 1146:23-1151:7.  The Court then took the matter under submission and told the parties it would issue a decision the following morning.  Id. at 1151:5-7.  Defendants offered to submit additional authorities on the issue, which the Court rejected, stating, "I'll take a look at what I think [the] law is that

14

applies to the case, and that will be it." <u>Id.</u> at 1151:25-1152:2. Defendants assert that, at this point, further objection or argument would have been futile. <u>See</u> <u>McGonigle v. Combs</u>, 968 F.2d 810, 823 (9th Cir. 1992) ("Where the district court is aware of a party's concerns with an instruction, and further objection would be unavailing, we will not require a futile formal objection.").

The Court disagrees. At this juncture, the Court had not yet informed the parties of its proposed instructions or offered the opportunity to object, as required under Rule 51(b)(2). The following morning, the Court issued proposed instructions and invited objections, stating, "You've each received a packet of my jury instructions. And do you have any comments with reference to those, or any objections? You may place them on the record." T.T. vol. 6 at 1169:2-5. Defendants did not object to the absence of an unclean hands instruction.

Defendants' position after the fact, that such an objection would have been futile, is flawed in two ways. First, the Court explicitly invited comment and objection. Second, Defendants continued to pursue other arguments after the Court had definitively ruled upon them. Even though the Court had taken extensive argument on the issue of modification the previous afternoon and taken that issue under submission, as it had with unclean hands, Defendants raised the issue of modification again after receiving the Court's instructions. <u>See</u> T.T. vol. 5 at 1152:9-1162:24; T.T. vol. 6. at 1169:6-1171:19. Clearly, Defendants did not view the Court's ruling on modification as definitive, or further discussion of that issue as futile, though

**United States District Court**
For the Northern District of California

15

the Court's words in taking the matter under submission were
nearly identical.  Despite this, after receiving the Court's
proposed instructions, Defendants did not place an objection on
the record.  They therefore failed to preserve that objection.

Even had the objection been preserved, however, the Court
would find no error.  Three conditions must be satisfied for a
district court's refusal to give a requested instruction to be
considered erroneous: "(1) the requested instruction correctly
stated the law, (2) the instruction dealt with an issue properly
before the jury, and (3) the failure to give the instruction
resulted in prejudicial harm to the requesting party."  <u>Goldsmith
v. Babgy Elevator Co.</u>, 513 F.3d 1261, 1287 (9th Cir. 2008)
(internal quotation marks omitted).  Defendants assert two
possible reasons why the Court might have failed to instruct on
unclean hands, each related primarily to the second condition: (1)
the Court found that unclean hands is not a defense to a claim for
breach of contract; or (2) the Court agreed with Cal-Agrex,
incorrectly, that Defendants were required to show prejudice to
prove unclean hands, and failed to do so.  <u>See</u> 50(b) Mot. at 19.

Both of Defendants' assertions are incorrect.[2]  However, the

_____

[2] The Court recognizes, as both parties argued in this matter,
that unclean hands is available as an affirmative defense to a
contract claim under California law.  <u>See</u> <u>Camp v. Jeffer, Mangels,
Butler & Marmaro</u>, 35 Cal. App. 4th 620, 638 (Ct. App. 1995) ("In
California, the doctrine of unclean hands may apply to legal as
well as equitable claims . . . and to both tort and contract
remedies." (internal citation omitted)).  In discussing jury
instructions and Cal-Agrex's Rule 50 motions at trial, the Court
asked the parties about the effect of the unclean hands defense and
its applicability to this case, but did not question the general
availability of the defense in contract claims.  <u>See</u> T.T. vol. 5 at
1146:23-1151:7.  The legal issue of whether unclean hands is

United States District Court
For the Northern District of California

Court need not address them, as Defendants' argument fails at a more fundamental level.  The Court did not, as Defendants suggest in both their Rule 50(b) Motion and their Rule 60(b) Motion, "reserve judgment" on the issue of unclean hands, or fail to adjudicate the issue.  <u>See</u> 50(b) Mot. at 19 n.13; 60(b) Mot. at 2.  Rather, the Court ruled on unclean hands at trial when, after taking Cal-Agrex's motion on the issue under submission, it refused to issue the requested instruction.  <u>See</u> T.T. vol. 5 at 1151:5-7.  Defendants explicitly concede, and in fact assert as the very premise of their Rule 60(b) Motion, that the Court was entitled to rule on the equitable issue without submitting it to the jury.[3]  <u>See</u> <u>Unilogic, Inc. v. Burroughs Corp.</u>, 10 Cal. App. 4th 612, 622 (Ct. App. 1992) ("the trial court has discretion whether to submit an equitable defense to the jury").  As such, unclean hands was not an "an issue properly before the jury," and Defendants cannot satisfy the second condition necessary for a showing of error.  <u>See</u> <u>Goldsmith</u>, 513 F.3d at 1287.

       3.   <u>Conversion</u>

     Defendants next argue that the evidence does not support the jury's verdict on Goodwin's conversion counterclaim, and that Goodwin is therefore entitled to a new trial on conversion and unjust enrichment.  "Conversion is the wrongful exercise of dominion over the property of another.  The elements of a

_____

available as a defense to breach of contract played no role in the Court's decision not to issue Defendants' requested instruction.

   [3] The Court addresses the merits of the Rule 60(b) Motion below.  <u>See</u> <u>infra</u> Section III.

17

conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Burlesci v. Petersen, 68 Cal. App. 4th 1062, 1066 (Ct. App. 1998). At trial, Cal-Agrex moved for judgment on this issue, arguing that Goodwin had failed to prove his ownership of, or right to possess, the 28 truckloads of NDM at issue in the counterclaim.  The Court denied the motion, finding there was evidence to demonstrate ownership and that the issue should be submitted to the jury. T.T. vol. 5 at 1145:6-16.

Defendants contend that Goodwin had "beneficial ownership" of the 28 truckloads of NDM, and that Cal-Agrex admitted this during trial.  The first element of conversion does not require legal title to the property.  "It is clear that legal title to property is not a requisite to maintain an action for damages in conversion.  To mandate a conversion action 'it is not essential that plaintiff shall be the absolute owner of the property converted but she must show that she was entitled to immediate possession at the time of conversion.'"  Hartford Fin. Corp. v. Burns, 96 Cal. App. 3d 591, 598 (Ct. App 1979) (quoting Bastanchury v. Times-Mirror Co., 68 Cal. App. 2d 217, 236 (Ct. App. 1945)) (emphasis in original).  The NDM was stored in a warehouse in Hastings, Nebraska, and belonged to Jeff Larson:

> Q.  AND THERE CAME A TIME WHEN YOU LEARNED THAT CAL-AGREX HAD PICKED UP SOME 28 TRUCKLOADS OF MILK POWDER FROM A NEBRASKA WAREHOUSE WHERE YOU WERE STORING MILK POWDER. IS THAT RIGHT?
>
> A.  IT WASN'T A WAREHOUSE WHERE I WAS STORING

18

United States District Court
For the Northern District of California

1    THE MILK.

2         Q.   WHO WAS STORING THE MILK THERE?

3         A.   JEFF LARSON

4    T.T. vol. 3 at 491:21-492:1.  Goodwin's contention that he had the

5    right to possess this NDM is based on the fact that he had

6    purchased 250 truckloads of NDM from Larson.  See 50(b) Reply at

7    8.  At trial, Goodwin testified that he purchased the 250

8    truckloads from Larson after receiving $500,000 from Cal-Agrex for

9    a purchase that fell through in Arizona.  See T.T. vol. 3 at

10   497:14-500:4, 537:7-538:17; T.T. vol. 5 at 1131:4-1132:16.

11   Gallegos testified that Cal-Agrex paid Goodwin for the NDM, but

12   that it came from Larson's warehouse, and gave varying testimony

13   on whether Larson or Goodwin owned it.  See T.T. vol. 5 at

14   1012:12-24, 1060:24-1061:12, 1069:4-23, 1071:10-25.  Gallegos also

15   testified that Cal-Agrex had valid release numbers authorizing it

16   to pick up the 28 truckloads of NDM from Larson.  Id. at 1061:13-

17   1063:1.  Further compounding the confusion about who owned the 28

18   truckloads of NDM was conflicting testimony about when Goodwin

19   actually paid Larson relative to when Cal-Agrex took it.  See T.T.

20   vol. 5 at 1032:12-23.  Cal-Agrex contends, and there is evidence

21   in the record, that Goodwin paid Larson on March 3, 2006, which is

22   after Cal-Agrex took the 28 truckloads, as evidenced by a March 2,

23   2006, letter from Gallegos to Goodwin addressing the dispute.  See

24   id. at 1133:7-13, Ex. P-24.

25        The record is, at best, unclear about whether or not Goodwin

26   had a right to possess the 28 truckloads of NDM Cal-Agrex took

27   from Larson's Nebraska warehouse.  At worst, for Defendants'

28
                                   19

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

motion, the evidence suggests that Goodwin bought the NDM from Larson <u>after</u> Cal-Agrex took possession.  Either way, the evidence certainly does not support Goodwin's conversion claim so overwhelmingly that the Court should take the extreme measure of setting aside the jury's verdict and granting a new trial. Moreover, because the Court will not set aside the conversion verdict, there is no warrant for a new trial on unjust enrichment, as that is only a means of measuring damages on a finding of conversion.

4.   <u>Damages</u>

Defendants' final argument for a new trial challenges the jury's damages award.  The jury awarded Cal-Agrex $2,501,595 in damages, which is more than $2,000,000 above Defendants' expert's highest estimate of Cal-Agrex's damages, and approximately $2,000,000 below Cal-Agrex's expert's lowest calculation of damages.  After the matter was submitted to the jury, the jury asked the Court the following question:

> Should we decide to award damages for breach of contract, are we bound to follow instruction #13 - Loss of Profits as specifically stated.  Or can we come up with a reasonable calculation based on the evidence.

<u>See</u> Docket No. 208.  The Court instructed the jury again to follow the original instructions.  <u>See</u> T.T. vol. 6 at 1294:9-1296:11.

Defendants contend that despite the Court's explicit direction, the jury's award proves that the jury disregarded either the law, as set forth in the Jury Instructions, or the evidence.  <u>See</u> 50(b) Mot. at 21.  "[T]he jury is not bound to accept the bottom line provided by any particular damages expert,

20

but the jury is bound to follow the law." In re First Alliance Mortgage Co., 471 F.3d 977, 1003 (9th Cir. 2006) (reversing trial court's denial of motion for new trial where jury averaged the estimates offered by two experts).  The only basis Defendants offer for their conclusion is the difference between the experts' estimates and the final award.  The only authorities Defendants provide are distinguishable.  In In re First Alliance, the court initially gave an improper instruction, corrected the instruction, and later agreed that the jury had disregarded the instructions. See id. at 1002-03.  In the only other case Defendants cite, Rosario v. Livaditis, 963 F.2d 1013 (7th Cir. 1992), the jury's conclusions were inconsistent, as two claims relied on identical facts but the jury awarded damages on one claim and not the other. Id. at 1021-22.  The jury's verdict here contains no similar internal inconsistency, nor do Defendants assert the contrary. Each of Defendants' authorities addresses a specific, identifiable mistake in the jury's award or in the court's instruction.  Here, Defendants do not point to a specific, correctable mistake. Rather, they assert that because the jury did not adopt the specific figures from either expert, the award must be incorrect. That is not sufficient.

Cal-Agrex points to several factors that may explain the variance between the expert's estimates and the award.  During trial, the parties disputed and presented evidence regarding every figure relevant to the calculation of damages.  This included the quantity of NDM at issue, the market value of the NDM on different dates and in different locations, and the costs Cal-Agrex incurred

21

United States District Court

For the Northern District of California

in attempting to cover Defendants' breach, among other things.
For each of these components of damages, the evidence could
support a wide range of figures.  For example, in addition to the
expert testimony, each of the central percipient witnesses --
Gallegos, Van Tassell, and Goodwin -- testified about what the
market price for various types of NDM was at different points in
time and in different markets, based on their own knowledge and
experience.  Depending on which of these witnesses the jury found
most credible, the award might change.  The Court therefore finds
this case comparable to DuBarry International, Inc. v. Southwest
Forest Industries, Inc., 231 Cal. App. 3d 552 (Ct. App. 1991), on
which Cal-Agrex relies.  In that case, the jury was presented with
substantial evidence related to the damages calculation, including
multiple different scenarios for recovery and varying assumptions
by the damages experts.  See id. at 562-63.  On appeal, the court
upheld the jury's verdict, despite the fact that the injury "could
have been less or substantially more than the amount actually
awarded."  Id. at 563.  As was the case in DuBarry International,
the jury here had ample evidence before it and the matter was
fully argued.  See id.  Under these circumstances, the Court
cannot conclude that the jury's award was either unreasonable or
unsupported by substantial evidence.

**III.  RULE 60(b) MOTION**

     In their Rule 60(b) Motion, Defendants suggest that the Court
reserved judgment on the issue of unclean hands, and should
therefore relieve them from judgment because this issue has not

22

**United States District Court**
For the Northern District of California

been adjudicated.  As noted above, the Court did not reserve

judgment.  See supra Section II.C.2.  Nor did the Court fail or

forget to adjudicate the question.  Id.  With the correct

procedural posture in mind, the Court considers the substance of

Defendants' motion.  Defendants ask the Court to relieve them from

the Judgment and conduct a hearing on the issue of unclean hands.

See 60(b) Mot. At 8.

Initially, the Court notes that while Defendants request a

hearing regarding their unclean hands defense, they do not suggest

why such a hearing is necessary.  The parties had the opportunity

to present evidence and argument on this issue at trial, and both

did so.  The record is complete.  Defendants do not argue that the

Court or Cal-Agrex prevented them from making their case regarding

unclean hands.  Nor do they give any indication of what argument

they might make, or what evidence they might introduce, if given

the opportunity.  And if such an argument or piece of evidence is

absent, Defendants do not attempt to justify their failure or give

the Court a reason to overlook that failure.  As such, the Court

concludes that an additional hearing would be pointless, and

proceeds solely on the question of whether or not to set aside the

Judgment based on unclean hands.

Rule 60(b) sets forth the possible grounds for relief from a

final judgment:

> On motion and just terms, the court may
> relieve a party or its legal representative
> from a final judgment, order, or proceeding
> for the following reasons:
>
> (1) mistake, inadvertence, surprise, or
> excusable neglect;

23

**United States District Court**
For the Northern District of California

(2) newly discovered evidence that, with
reasonable diligence, could not have been
discovered in time to move for a new trial
under Rule 59(b);

(3) fraud (whether previously called intrinsic
or extrinsic), misrepresentation, or
misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released,
or discharged; it is based on an earlier
judgment that has been reversed or vacated; or
applying it prospectively is no longer
equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Defendants bring their motion based on

Rule 60(b)(6), which "untethers the discretion of judges from the

constraints of common law remedies and grants broad remedial power

to vacate judgments where justice so requires." Shoshone-Bannock

Tribes of the Fort Hall Reservation v. Leavitt, 408 F. Supp. 2d

1073, 1080 (D. Or. 2005).  However, this discretion is not to be

exercised lightly.  A party seeking relief from judgment must

demonstrate extraordinary circumstances.  Straw v. Bowen, 866 F.2d

1167, 1172 (9th Cir. 1989).  "[A] party invoking Rule 60(b) must

establish a burden or hardship that 'cries out for the unusual

remedy' of reopening a final judgment." Dolezal v. Fritch, No.

08-1362, 2008 U.S. Dist. LEXIS 103404, at *9 (D. Ariz. Dec. 12,

2008) (quoting Straw, 866 F.2d at 1172).

Defendants' Rule 60(b) Motion does not describe a

particularly unusual hardship or an extraordinary circumstance

requiring relief.  Although the motion rehashes an unclean hands

argument the Court has rejected, Defendants do not add any

24

1  additional reason for relief, or any authority that a Court's

2  unfavorable ruling on an equitable issue, absent more, is grounds

3  for relief under Rule 60(b)(6).  The Court now makes the prior

4  rejection on unclean hands, and the foundation for that rejection,

5  more explicit.

6      "The doctrine of unclean hands does not deny relief to a

7  plaintiff guilty of any past misconduct; only misconduct directly

8  related to the matter in which he seeks relief triggers the

9  defense." Kendall-Jackson Winery, Ltd. v. Super. Ct., 76 Cal.

10  App. 4th 970, 974 (Ct. App. 2000).  In this case, it is the latter

11  issue -- the relationship between the alleged misconduct and the

12  claim before the Court -- that is critical.

> The misconduct that brings the unclean hands
> doctrine into play must relate directly to the
> cause at issue.  Past improper conduct or
> prior misconduct that only indirectly affects
> the problem before the court does not suffice.
> The determination of the unclean hands defense
> cannot be distorted into a proceeding to try
> the general morals of the parties.

18  Id. at 979.  Defendants assert that two categories of actions by

19  Cal-Agrex can be considered predicates for the unclean hands

20  defense: "Cal-Agrex acquired the NDM under the Purchase Agreement

21  with the intent to remove the product markings by repackaging the

22  NDM and selling the product into human consumption channels."

23  60(b) Mot. at 4.  And, "Cal-Agrex took possession of 28 truckloads

24  of NDM beneficially owned by Goodwin, without Goodwin's

25  permission, by providing inappropriate 'release numbers' to a

26  warehouse in which the NDM was sold."  Id. at 5.

27

28

United States District Court
For the Northern District of California

Neither of these actions relates to the breach of contract claim on which the jury was to rule.  It is undisputed that Defendants never shipped any NDM under the Purchase Agreement at issue.  As such, Defendants' first basis for unclean hands is fundamentally flawed because Cal-Agrex never "acquired NDM under the Purchase Agreement."  Moreover, anything Cal-Agrex did to the NDM it actually received has no bearing on the breach of contract claim that was submitted to the jury.

Defendants contend that Cal-Agrex's intent to mislabel the NDM it would have received under the Purchase Agreement is sufficient to trigger the unclean hands defense.  See 50(b) Mot. at 19; 60(b) Reply at 3-4.  Defendants rely on the proposition that "[e]quity, in administering its remedies, regards not alone the accomplished fact, but also the intent and purpose of the act."  Belling v. Croter, 57 Cal. App. 2d. 296, 306 (Ct. App. 1943).  This line of argument assumes that the intent to mislabel was somehow harmful to Defendants.  It is true, as Defendants assert, that they need not show actual harm to prevail on unclean hands.  However, the Court, upon consideration of the evidence at trial, finds that Defendants' assertions of injury, or of possible injury, based on the relabeling are post-hoc rationalizations.  Goodwin and Van Tassell both recognized that the prices at which they were selling NDM to Cal-Agrex were substantially higher than what either had ever paid, or would pay, for animal feed, absent extremely unusual circumstances.  See T.T. vol.2 at 417:3-418:25; T.T. vol. 3 at 458:9-462:23, 501:21-502:9; T.T. vol. 5 at 1109:3-1111:4.  They knew that Cal-Agrex was planning to export the NDM,

26

**United States District Court**
For the Northern District of California

1   as they met representatives from Cal-Agrex's purchasers in Asia.

2   See T.T. vol. 2 at 419:10-421:4, 427:21-428:21; T.T. vol. 3 at

3   442:4-443:8, 591:24-593:7; T.T. vol. 5 at 1122:2-1124:12.

4   　　　Having observed both Goodwin and Van Tassell on the stand

5   during trial, the Court finds their testimony suggesting they were

6   ignorant of Cal-Agrex's business plans unreliable.  Both

7   Defendants were familiar with the market pricing of legitimate

8   cattle feed, and both knew Cal-Agrex was an exporter.  Given that

9   information, it would require willful ignorance for either not to

10  recognize exactly what Cal-Agrex was doing.  The Court finds it

11  more likely, however, that both Defendants were willing

12  participants in the enterprise and that their suggestion to the

13  contrary now is simply a tactic to avoid liability for their

14  breach of the Purchase Agreement.  Therefore, considering that

15  both Defendants went into the Purchase Agreement fully informed,

16  the Court concludes that the equities do not warrant application

17  of unclean hands here.  This conclusion is not simply a suggestion

18  that both parties' hands were unclean, as that would not be

19  sufficient to bar the defense.  See Belling, 57 Cal. App. 2d at

20  304-5.  Nor does it reflect a weighing of the comparative fault or

21  uncleanliness of the parties.  See id.  Rather, the Court's

22  conclusion is that, because all parties to the Purchase Agreement

23  were aware of what was taking place, Cal-Agrex's conduct was not

24  inequitable with respect to Defendants, and therefore cannot be a

25  basis for relief in the instant motion.

26  　　　Defendants' second predicate action, the alleged conversion,

27  also fails as a basis for asserting unclean hands.  Even if

28

**United States District Court**
For the Northern District of California

Cal-Agrex's actions amounted to conversion, which the jury found they did not, those actions are entirely unrelated to the Purchase Agreement at issue.  As discussed above in the context of Defendants' Rule 50(b) Motion, the 28 truckloads of NDM at issue in the conversion counterclaim were taken as replacements for an order for 100 truckloads that Goodwin was supposed to supply out of Arizona on a different contract.  See supra Section II.C.3. The testimony on this issue was extensive.  See T.T. vol. 1 at 178:4-179:16; T.T. vol. 2 at 397:25-398:8, 412:16-24, T.T. vol. 3 at 439:14-441:3, 497:14-500:4, 537:7-538:17; T.T. vol. 5 at 1028:3-12, 1062:1-1063:1, 1131:4-1132:16.  Defendants' assertion that the 28 truckloads were related to the Purchase Agreement they breached is simply unwarranted.  Given Defendants' argument at trial that there was only one contract at issue in Cal-Agrex's breach claim, an issue Defendants emphasized in order to minimize their damages exposure, their attempt to blur the contracts together here is disingenuous.  See T.T. vol. 2 at 213:18-214:21; T.T. vol. 6 at 1264:23-1266:12.  The only connection between the Arizona agreement that led to the disputed 28 truckloads and the Purchase Agreement in Cal-Agrex's claim for breach is that on both contracts, Cal-Agrex gave one or both of the Defendants a substantial amount of money and received nothing in return.

For all of the foregoing reasons, the Court finds that Defendants' affirmative defense of unclean hands fails.  The Court concluded this at trial when ruling on Cal-Agrex's Rule 50 motion, and reaches the same result now.  Defendants have not persuaded the Court that there exist any extraordinary circumstances

warranting the abandonment of an otherwise final judgment.  The

Rule 60(b) Motion is therefore DENIED.

**IV.   RULE 59(e) MOTION**

Cal-Agrex asks the Court to amend the Judgment to include an

award of both prejudgment and post-judgment interest on the

damages award.  See 59(e) Mot.  Defendants point out that post-

judgment interest accrues automatically by operation of law, but

oppose prejudgment interest.  See 28 U.S.C. § 1961.  The Court

therefore addresses only the question of prejudgment interest.

"In diversity actions, state law determines the rate of

prejudgment interest, and postjudgment interest is governed by

federal law." AT&T Co. v. United Computer Sys., Inc., 98 F.3d

1206, 1209 (9th Cir. 1996).  In California, prejudgment interest

is governed by Civil Code section 3287, which provides:

> (a) Every person who is entitled to recover
> damages certain, or capable of being made
> certain by calculation, and the right to
> recover which is vested in him upon a
> particular day, is entitled also to recover
> interest thereon from that day, except during
> such time as the debtor is prevented by law,
> or by the act of the creditor from paying the
> debt. . . .
>
> (b) Every person who is entitled under any
> judgment to receive damages based upon a cause
> of action in contract where the claim was
> unliquidated, may also recover interest
> thereon from a date prior to the entry of
> judgment as the court may, in its discretion,
> fix, but in no event earlier than the date the
> action was filed.

Cal. Civ. Code § 3287.  Cal-Agrex requests prejudgment interest on

the $900,000 of unreturned deposit dating back to the date of the

United States District Court

For the Northern District of California

breach, which was approximately May 16, 2006, and interest on the remainder of the damages award dating back to the filing of the Complaint.[4]

The Purchase Agreement explicitly provides for return of the deposit in the event of nondelivery.  <u>See</u> Ex. P-107.  It is uncontested that Defendants never shipped NDM under that contract and that they kept $900,000 of the $1,500,000 deposit.  The only question is whether the various offsets applied by the jury after consideration of the evidence were liquidated or unliquidated.  If the offsets were unliquidated, Defendants assert that those offsets should preclude application of section 3287(a).

The Court agrees with Cal-Agrex that the offsets the jury applied were liquidated and certain.  Where the parties contest liability for claims (or offsets), but not the amount of damage at stake, section 3287(a) is still applicable.  <u>See Fireman's Fund Ins. Co. v. Allstate Ins. Co.</u>, 234 Cal. App. 3d 1154, 1172 (Ct. App. 1991).  The jury, after determining that Cal-Agrex suffered damages in the amount of $2,894,371, made four deductions totaling $392,776: $78,707.50 for the balance due to Goodwin on the 28 truckloads taken from the Hastings, Nebraska, warehouse to fulfill the Arizona contract; $196,768.75 due to Goodwin on Cal-Agrex contract #618; $79,800 in shipping charges due to Goodwin; and a commission of $37,500 to Goodwin.  <u>See</u> Verdict.  These sums were

---

[4] The Court acknowledges that the May 16 date is an approximation, or as Defendants label it, "extrapolation." However, it cannot be disputed that in or about May 2006, Defendants made clear that they would not ship NDM under the Purchase Agreement.  As such, the Court deems this an appropriate point to being the calculation of interest.

**United States District Court**
For the Northern District of California

1   not in dispute, as Gallegos conceded on the stand that Cal-Agrex

2   owed Defendants these exact amounts for each of these items.  <u>See</u>

3   T.T. vol. 2 at 228:10-21, 240:2-7, 242:14-24, 243:8-21.  The Court

4   therefore concludes that section 3287(a) compels an award of

5   prejudgment interest on the unreturned $900,000 deposit, dating

6   back to the breach.  According to uncontested calculations

7   submitted by Cal-Agrex's damages expert, applying the statutory

8   rate of interest set in California Civil Code section 3289, the

9   interest on this portion of the Judgment should be $249,041.  <u>See</u>

10  Ip Decl. ¶ 3, Ex. B.[5]  The Court will therefore amend the Judgment

11  to reflect that interest.

12       Whether or not to award interest on the remainder of the

13  damages falls to the Court's discretion under section 3287(b).

14  Cal-Agrex has not offered the Court any particularly compelling

15  reason to make such an award.  While Cal-Agrex has been denied use

16  of the funds during the course of the litigation, the case did not

17  drag on for an unreasonable amount of time, and there was no

18  conduct by Defendants which unjustly prolonged the dispute.  The

19  Court therefore declines to award prejudgment interest on the

20  remainder of the award.

21

22  **V.    <u>CONCLUSION</u>**

23       The Court has considered all of the parties arguments on the

24  motions submitted.  For the reasons set forth above, the Court

25  ORDERS as follows:

26  _____

27       [5] M. Monica Ip, CPA, Cal-Agrex's expert witness, submitted a
    declaration in support of the Rule 59(e) Motion.  Docket No. 216.

28                                  31

1.   Defendants' renewed motion for judgment as a matter of law is DENIED.

2.   Defendants' motion for a new trial is DENIED.

3.   Defendants' motion for relief from the Judgment is DENIED.

4.   Cal-Agrex's motion to alter or amend the Judgment is GRANTED IN PART and DENIED IN PART.

5.   The Court shall issue an Amended Judgment to reflect the award of prejudgment interest on the unreturned deposit.


IT IS SO ORDERED.


Dated: April 13, 2009



_____
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

32